UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06CV-124-H

CEMEX, INC., d/b/a KOSMOS CEMENT          PLAINTIFFS
COMPANY, et al.

VS.

LMS CONTRACTING, INC.,
AND
LANDERS EXPLOSIVES, INC.                  DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs, Cemex, Inc. ("Cemex") and Kosmos Cement Company ("Kosmos") (collectively referred to as "Plaintiffs"), brought suit seeking recovery under tort and contract for damages from work that LMS Contracting, Inc. ("LMS") and its subcontractor Landers Explosives, Inc. ("Landers") performed on Cemex's property. Landers now moves for summary judgment on the grounds that the tort actions against it are prohibited by the economic loss rule and the absence of privity between Cemex and Landers. Plaintiffs move for partial summary judgment against Landers on claims of negligence and strict liability.

For the reasons that follow, the Court concludes that Plaintiffs may not pursue their claims against Landers. At this time, the Court is addressing only the cross motions for summary judgment between Landers and Cemex, not any motions relating to LMS.

I

This lawsuit arose from a construction project taking place on Plaintiffs' property. In October 2004, Cemex and LMS entered into a written contract providing that LMS would conduct certain blasting and excavation work on Cemex's property in order for Cemex to then

create a "Slot Storage Facility and Tunnel." The tunnel was to be used by Cemex in its processing of crushed limestone. LMS then subcontracted the blasting portion of the project to Landers Explosives, Inc.

Cemex has brought suit against Landers on multiple theories of tort, in essence claiming that Landers was negligent in blasting the areas to be used for the storage facility and tunnel and that Landers should be held strictly liable for all damages caused by the blasting. Cemex has phrased its negligence claims both as ordinary negligence and negligence per se based on Landers' alleged violations of Kentucky statutes regulating the use of explosives in construction projects. It is undisputed that there is no contract between Cemex and Landers. Cemex asserts that Landers' negligence caused extensive damage to the area where the storage facility and tunnel was to be constructed, which created unstable rock walls and required Cemex to expend additional monies in building the facility.

II

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Then "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).

2

III

Landers contends that the economic loss rule bars Plaintiffs' claims. The general doctrine is well explained by Justice Keller of the Kentucky Supreme Court in his concurring opinion in *Presnell Construction Managers, Inc. v. EH Construction, LLC*, 134 S.W.3d 575, 583-584 (Ky. 2004):

> The 'economic loss rule' is a judicially created doctrine that marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others. The crux of the doctrine is not privity but the premise that economic interests are protected, if at all, by contract principles, rather than tort principles. Although originally rooted primarily in product liability cases to protect manufacturers from tort liability for damage that is limited to the product itself, the economic loss rule has evolved into a modern, general prohibition against tort recovery for economic loss.

(citations omitted). As Justice Keller explains, "[T]he rule is stated with ease but applied with great difficulty." *Id.* at 584.

In Kentucky, the economic loss rule applies "to products liability cases, to business purchases, and to construction cases." *Davis v. Siemens Medical Solutions USA, Inc.*, 399 F.Supp.2d 785, 801 (W.D.Ky. 2005). As a general matter, it prohibits a party who contracted with another to provide a specific product from recovering for the loss in value of the product "caused by a defect in that product (direct economic loss) and consequential loss flowing from the defect, such as lost profits (consequential economic loss)." *Mt. Lebanon*, 276 F.3d at 848. In determining what the "product" contracted for is, the Court should be guided by the ability of the purchasing party to allocate the risk of loss by contract. *Id.* at 852

As a preliminary matter, Plaintiffs claim that Kentucky has not adopted the economic loss rule and that it should not be applied to this case. While it is true that the Kentucky

3

Supreme Court has never expressly adopted the economic loss rule, the Kentucky Court of Appeals has adopted the rule, *Falcon Coal Co. v. Clark Equipment Co.*, 802 S.W.2d 947 (Ky. Ct. App. 1990), and the Kentucky Supreme Court appears to have applied a similar rationale to other cases. *See, e.g., Real Estate Marketing, Inc. v. Franz*, 885 S.W.2d 921 (Ky. 1994); *Presnell*, 134 S.W.3d 575. Moreover, this Court is bound by the Sixth Circuit's prediction that "the Kentucky Supreme Court will apply the economic loss rule to bar a tort claim in a case that involves a business purchase." *Mt. Lebanon*, 276 F.3d at 849.

A.

Next, the Court must consider whether the economic loss rule should apply to the facts of this case. As this Court has previously announced, the economic loss rule under Kentucky law applies to construction cases. *Davis*, 399 F.Supp.2d at 801. Furthermore, the Sixth Circuit has held that the rule applies to cases involving purchasers and subcontractors who did not have any direct contractual relationship. *Mt. Lebanon*, 276 F.3d at 852. Finally, the proper "approach is to apply [it] if the purchasing party had the opportunity to allocate the risk of loss by contract." *Id.* Here, not only did the parties have the "opportunity" to allocate the risk of loss arising from the blasting, the parties *did* allocate the risk of loss. The contract between LMS and Plaintiffs clearly provides that LMS will be responsible for all damages arising from the blasting activity. Under the Sixth Circuit's analysis in *Mt. Lebanon*, the economic loss rule would apply in this case.

The remaining issue is what recovery does the rule bar here. Plaintiffs claim that their losses include damage to the ground surrounding the project zone and, primarily, the cost of repairing the blasting damage to properly construct the storage facility and tunnel. Plaintiffs

4

claim that these damages are separate from the "product" at issue, namely the construction project, and should, therefore, all be compensated. Landers argues that these damages are the very essence of economic losses.

At the outset, the Court notes the difficulty in determining the extent of damages that the economic loss rule bars. This case is not the simple case of a defective tractor that damages only itself. Rather, this is a complex construction case involving the destruction of grounds necessary to complete the construction project. The Court is, however, guided by the principles of the Sixth Circuit in *Mt. Lebanon*. "We predict that the Kentucky Supreme Court would hold that the product for economic loss rule purposes includes the entire unit for which a party to a complex transaction has the ability to distribute risk by contract and insure against it." *Mt. Lebanon*, 276 F.3d at 851. This guiding principle strongly indicates that the land surrounding the blasting zones is part of the "product" for purposes of the economic loss rule. Plaintiffs admit,

> The Contracts required the Defendants to remove rock from Cemex's property along defined and predetermined physical parameters in a manner that would leave Cemex's adjacent property undamaged and in a condition sufficient to allow Cemex to place concrete walls and foundations upon and against Cemex's property at location and in the manner specifically defined in the Contract Documents. LMS and Landers were to conduct its blasting and excavation work in such a manner as to ensure that Cemex's property adjacent to the Slot Storage and Tunnel Facility would be clean and free of broken and loose rock. . . . [Defendants] mis-applied the explosives so-utilized in performance of the Contracts' work [and] . . . left Cemex's adjacent property in a state that did not conform to the Contract Documents.

(Pl.'s Mot. Partial Summ. J. 7-8.) These admissions show that the parties contemplated damages to the surrounding walls as a part of the project and, as indicated above, the parties were able to allocate the risk for any such blasting damage. These are the circumstances under which the economic loss rule should apply.

Examination of two cases helps to illustrate why this result is proper. In *Mt. Lebanon*,

the defendant provided defective wood to a general contractor who built a nursing home for the plaintiff. When that wood failed, it caused significant damage to the entire nursing home, not just damage to the wood itself. Although the plaintiff argued that the economic loss rule should bar recovery only for damage to the wood itself, the Sixth Circuit held that "the product is the entire nursing home because Mt. Lebanon had the ability to allocate risk contractually and/or insure against loss with respect to the entire nursing home." *Mt. Lebanon*, 276 F.3d at 851. Likewise, in this case, Plaintiffs had the ability to allocate the risk of loss to the surrounding rock walls.

In *Barton Brands, Ltd. v. O'Brien & Gere, Inc. of N. Am.*, 550 F.Supp.2d 681 (W.D.Ky. 2008), this Court ruled that the economic loss doctrine applied to bar the plaintiff's recovery for losses resulting from a defective design of a pollution control system. In *Barton Brands*, the plaintiff contended that the economic loss rule should only bar recovery of damage to the system itself, not damage to the many expensive bags that were housed inside of the system. This Court, however, determined that recovery for the lost bags was also barred because the bags were stored inside the system's housing. *Id.* at 689. In the present case, the walls surrounding the blasting zones are similar to those bags as they were in the same area as the project and could be accounted for in allocating risk.

Therefore, the Court is convinced that the economic loss rule bars all Plaintiffs' damages.

B.

Finally, Plaintiffs contend that the economic loss rule does not prohibit their claims against Landers because Plaintiffs' claims are based on independent duties created by various Kentucky statutes regulating blasting. While the Court recognizes that Kentucky has allowed

6

independent torts, such as fraudulent misrepresentation, to be actionable even where the economic loss rule applies to the plaintiff's other tort claims, Plaintiffs do not present such separately actionable torts.

In essence, Plaintiffs' contention that Landers has a statutory duty is nothing more than a claim of negligence per se. Plaintiffs claim that because Landers violated various regulatory statutes related to blasting, it violated its duties to Plaintiffs. In asserting that the economic loss rule does not apply where statutes provide the basis for independent duties, Plaintiffs rely on *Real Estate Marketing, Inc. v. Franz*. However, *Franz* does not support Plaintiffs' contention. While *Franz* recognized an independent claim based on violations of building codes, the Kentucky Supreme Court was explicit that this was only the case because KRS § 198B.130 specifically creates a personal cause of action. *Franz, 885 S.W.2d at 927*. In fact, the court dismissed the *Franz* plaintiff's negligence per se claims based on violations of the statute because negligence per se claims must be treated the same as a basic negligence claim. *Id.* "[N]egligence per se is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Id.* (citation omitted). Here, statutes allegedly violated by Landers do not create a private cause of action. Therefore, Plaintiffs' negligence per se claims meet the same fate as its basic negligence claims.

IV

Landers also argues that the absence of privity bars Plaintiffs' claims. The economic loss rule and privity of contract are "inextricably intertwined concepts." *Barton Brands*, 550 F.Supp.2d at 684. The Kentucky Supreme Court succinctly stated the privity doctrine as applied to cases such as this in *Presnell*: "Although privity is no longer required to maintain a tort action,

one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract." *Presnell*, 134 S.W.3d at 579. As discussed above, Plaintiffs have alleged three different sources of liability against Landers: strict liability, negligence and negligence per se. The Court finds that the first two may also be dismissed on independent grounds.

A.

First, Plaintiffs' claim of strict liability is not applicable to our facts. Plaintiffs contend that whenever damage results from the use of explosives, the blasting party is strictly liable for the damages. While it is true that Kentucky courts routinely apply strict liability to blasting actions, such a claim is inappropriate under the current facts. *See, e.g., Randall v. Shelton*, 293 S.W.2d 559, 560 (Ky. 1956) (stating that strict liability "is applied where the defendant engages in the extrahazardous activity of blasting and injures *another's* property") (emphasis added). In all of the cases applying strict liability to blasting, the defendants were engaged in blasting and their conduct damaged either the property or person of someone not connected to the blasting.

The Court has been unable to locate a Kentucky case, and the parties have not cited the Court to such a case, in which the plaintiffs were the party that hired the blasters and the blasting occurred on the plaintiffs' property per the plaintiffs' instructions. However, from the other Kentucky cases, it appears that the injury suffered must be to *another* person not related to the blasting. As Landers points out, if the Court were to hold Landers strictly liable, any party who contracts with a blasting company would be able to recover in strict liability if the party is dissatisfied with the company's performance. The Court predicts that the Kentucky Supreme Court would not extend the strict liability doctrine to such extremes and, therefore, finds that

8

strict liability is not applicable to the facts of this case.[1]

B.

The Court next addresses Plaintiffs' claim in negligence.  Plaintiffs assert that Landers had a duty to conduct core borings before beginning their work and that Landers had a duty to warn Plaintiffs that the geological features of the ground would prevent the project from being completed to Plaintiffs' original specifications.  Although Plaintiffs assert that these duties are independent of any contract, the fact remains that Landers would have had no such duties in the absence of the contract.  *See Barton Brands*, 550 F.Supp.2d at 687 ("Absent a contract with Barton Brands, Astec did not owe Barton Brands an affirmative duty to determine the cause of fires.  Such an obligation, if it existed at all, would have arisen from the contractual relationship between Astec and O'Brien & Gere, to which Barton Brands was not a party.").  If Landers had these duties, it was only so that it could properly carry out its blasting work under its contractual relationship with LMS.  In fact, Plaintiffs admit that "the *Contracts* placed a duty on Defendants to conduct any surveys or subsurface investigations necessary to carry out the work."  (Pl.'s Mot. Partial Summ. J. 27) (emphasis added).  Because the allegations of negligence are, in essence, a rephrasing of a basic contract claim where no contract exists between Plaintiffs and Landers, such claims are barred under the doctrine of privity.  *Presnell*, 134 S.W.3d at 579.

---

[1] Moreover, the economic loss rule, as discussed above, operates to bar recovery under strict liability.  Thus, even if a strict liability action could be maintained against a party engaged by the plaintiffs to conduct blasting, such an action is prohibited under the facts of this case.

9

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record